IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KENNETH MERRITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:24-cv-02196-TLP-atc |
| v. | ) |
| | ) |
| SQUARE CAPITAL, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER ADOPTING REPORT AND RECOMMENDATION**

Pro se Plaintiff Kenneth Merritt sued Defendant Block, Inc.[1] in state court for "breach of contract, retaliation, fraud, and bad faith" arising out of Plaintiff's Cash App[2] account. (ECF No. 1-1 at PageID 133–40.) Defendant then removed the case to federal court. (ECF No. 1 at PageID 1–6.) Shortly after, Defendant moved to compel arbitration or, in the alternative, to dismiss the case for failure to state a claim. (ECF No. 7 at PageID 199–200.) Plaintiff opposed the motion (ECF No. 8 at PageID 304–14), and Defendant replied (ECF No. 9 at PageID 315–22). Plaintiff then filed a surreply. (ECF No. 10 at PageID 323–29; *see also* ECF No. 16 at PageID 346–47.)

Magistrate Judge Annie T. Christoff ("Judge Christoff") then entered a Report and Recommendation ("R&R") recommending that the Court grant Defendant's motion to compel arbitration based on the arbitration clause in the contract between the parties. (ECF No. 16 at

---

[1] Plaintiff's Complaint identified Defendant as "Square Capital, LLC," but Defendant's correct name is "Block, Inc." (ECF No. 1.)
[2] Cash App is one of Block's applications that allows users to transfer money.

1

PageID 345–59.)  Plaintiff timely objected.  (ECF No. 17 at PageID 360–64.)  And Defendants responded to the objection.  (ECF No. 18 at PageID 365–70.)

For the reasons below, the Court **ADOPTS** the R&R and **GRANTS** Defendant's motion to compel arbitration.

## LEGAL STANDARD

A magistrate judge may submit to a district court judge proposed findings of fact and a recommended ruling on certain dispositive pretrial matters, including motions to compel arbitration.  *See* 28 U.S.C. § 636(b)(1)(A)–(B).  And the district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).  Before the district court adopts or rejects the proposed findings or recommendations, a party may object to them "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  If neither party objects, the district court reviews the R&R for clear error.  Fed. R. Civ. P. 72(b). But if there is an objection, the district court reviews the objected-to portions of the R&R de novo.  Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

An objecting party cannot raise new arguments or issues in objections that it did not present to the magistrate court, unless the party has a compelling reason for failing to raise the issue before.  *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).  And any objections must "be clear enough to enable the district court to discern those issues that are dispositive and contentious."  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).  In fact, "[o]verly general objections do not satisfy the objection requirement" at all.  *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (citing *Miller*, 50 F.3d at 380), *abrogated on other grounds by Jones v. Bock*,

2

549 U.S. 199 (2007); *see also Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citing *Miller*, 50 F.3d at 380)). And so, when a plaintiff submits only vague, general, or conclusory objections, the district court may review the R&R for clear error, rather than de novo. *See id.* In any case, the district court need not articulate all its reasons for rejecting a party's objection. *See Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986). Because Plaintiff here timely objected with specificity (ECF No. 17 at PageID 360–64), the Court reviews the R&R de novo.

## DISPOSITION

Having reviewed the record de novo, the Court finds no error with Judge Christoff's conclusions in the R&R. The Court therefore **ADOPTS** the R&R and **GRANTS** Defendant's motion to compel arbitration and stay the case pending arbitration.

I.   **Background**

    A.   **Factual Background**

In February 2019, Plaintiff opened an account on Cash App, an application Defendant created to allow users to send and receive money. (ECF No. 7-2 at PageID 223.) To create his account, Plaintiff entered his phone number into the app, and Cash App prompted him to verify the number by submitting a one-time verification code. (*Id.*) The message stated, "Cash App: [code] is your sign-in code. By entering, you agree to the Terms, E-Sign Consent, and Privacy Policy: http://squareup.com/legal/cash-ua." (*Id.*) And the hyperlink led to the General Terms of Service ("GTOS").³ (*Id.*) Plaintiff had to submit the verification code and agree to the GTOS

---

³ In December 2019, Defendant amended its GTOS, which it posted on its website. (ECF No. 7-3 at PageID 227.) Even so, the new terms contain an identical arbitration provision. (ECF No. 7-5 at PageID 250–52.)

3

before Plaintiff could finish creating or start using his Cash App account.  (*Id.* at PageID 224.)  Plaintiff followed the message's prompts and entered the verification code, thereby agreeing to the GTOS.  (*Id.* at PageID 223.)  Plaintiff then finished setting up his Cash App account and began using it.  (*Id.*)

The GTOS contained an arbitration provision which requires Plaintiff to arbitrate potential legal disputes.  (ECF No. 7-4 at PageID 236–37.)  Indeed, it compels arbitration for "any claim, controversy, or dispute between [Plaintiff] and [Defendant], . . . including any claims relating in any way to these Terms of the Services, or any other aspect of our relationship."  (*Id.* at PageID 236.)  And the provision compels arbitration on "all threshold arbitrability issues, including issues relating to whether the General Terms and/or Additional Terms (or any aspect thereof) are enforceable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel."  (*Id.* at PageID 236–37.)

About a year and a half later in September 2020, Plaintiff contacted Defendant about being unable to access his transferred funds.  (ECF No. 7-6 at PageID 256.)  Over the next month, he communicated with Defendant about his account issues and received varying responses from Cash App representatives.  (*Id.* at PageID 256–62.)  Plaintiff also contacted his bank and initiated a fraud claim.  (ECF No. 1-1 at PageID 110.)  In October 2020, Defendant informed Plaintiff that he had enabled the "Auto Add Cash feature," which deducted $25 daily from his account.  (*Id.* at PageID 109.)  After realizing the funds were not improperly transferred, Plaintiff requested his bank cancel the fraud claim.  (*Id.*)  But the bank refunded $1,100 to Plaintiff's account and reinitiated the fraud claim anyway.  (*Id.*)  As a result, Cash App allegedly "confiscated" the remaining sum in Plaintiff's account and closed it.  (*Id.*)

### B.     Procedural Background

In May 2023, Plaintiff sued Defendant in the General Sessions Court of Shelby County, Tennessee ("General Sessions Court"). (*Id.* at PageID 131.) He alleged that Defendant "violated Tennessee Code Section 47-18-104 using deceptive practice to induce business." (*Id.*) And the General Sessions Court permitted Defendant to interplead Plaintiff's $480 Cash App balance. (*Id.* at PageID 193–94.) The General Sessions Court then awarded Plaintiff the $480. (*See* ECF No. 10 at PageID 325.) And yet, Plaintiff appealed to the Shelby County Circuit Court ("Circuit Court").[4] (ECF No. 1-1 at PageID 132.) The Circuit Court initially dismissed the case for failure to prosecute but later set that dismissal aside and granted Plaintiff leave to amend his pleadings. (*Id.* at PageID 122–23, 148.)

Plaintiff amended his complaint, alleging Defendant improperly closed his Cash App account and kept his money. (*Id.* at PageID 156–63; *see also id.* at PageID 133–40.) Plaintiff asserted claims for "breach of contract, retaliation, fraud, and bad faith" and now seeks $85,000 in compensatory damages, $200,000 in punitive damages, and $2,000 in fees and costs. (*Id.* at PageID 156–63.) Defendant then removed the lawsuit to this Court on diversity jurisdiction grounds. (ECF No. 1 at PageID 1–6.) Defendant now asserts that Plaintiff's claims are subject to Cash App's arbitration provision in the GTOS and moves to compel arbitration and to stay the case. (ECF No. 7-1 at PageID 201–02.)

## II.    Arbitration

The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), "applies to arbitration agreements in any 'contract evidencing a transaction involving [interstate] commerce.'" *Swiger*

---

[4] Though the judgment was in his favor, Plaintiff appealed because he felt the judgment "did not compensate him for the inconvenience and hardship caused by the delay." (ECF No. 10 at PageID 325.)

*v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (quoting 9 U.S.C. § 2).  And under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that a district court shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796, 807 (E.D. Ky. 2016) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Before a court will compel arbitration, it generally decides whether the parties entered a valid arbitration agreement and whether the agreement covers the alleged claims.  "Because arbitration agreements are fundamentally contracts," courts review the "enforceability of an arbitration agreement according to the applicable state law of contract formation."  *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)).  This court must confirm "that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement."  *Id.* at 415–16 (quoting *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)).

But the court does not decide these threshold questions of validity and scope when the contract also contains a delegation clause.  Under the FAA, a delegation clause "allows parties to agree that an arbitrator, rather than a court, will determine gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Swiger*, 989 F.3d at 505 (quotation marks and citations omitted); *see also Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("[T]he very issue of arbitrability is compelled to an arbitrator.").  Thus, "[t]he practical effect of a delegation

6

provision is that if arbitrability is challenged, then the arbitrator, not the court, must address the challenge." *Id.* When parties include a dlegation clause, the only issue that remains before the Court is the delegation clause's validity, and a party can only challenge its validity by specific objection. *See Swiger*, 989 F.3d at 505–06 (requiring a party to raise a "specific challenge" to a delegation clause or to waive the challenge); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71–76 (2010) (considering a specific challenge to the delegation clause waived when the party only broadly challenged the entire arbitration agreement).

**III.     Analysis**

Judge Christoff correctly found that "[e]ach of Merritt's arguments against referring this matter to arbitration goes to either the merits of the parties' dispute or the question of arbitrability," which are all issues that must go to arbitration. (ECF No. 16 at PageID 355.)

First, the arbitration provision in the GTOS to which the parties agreed applies to Plaintiff's claims here. The GTOS compels arbitration on "any claim, controversy, or dispute between [Plaintiff] and [Defendant], . . . including any claims relating in any way to these Terms of the Services, or any other aspect of our relationship." (ECF No. 7-4 at PageID 236.) And Plaintiff's claims relating to money that Defendant allegedly "confiscate[ed]" and "seiz[ed]" from his account relates to Plaintiff's relationship with Defendant as a user of Cash App. (ECF No. 1-1 at PageID 156.) The Court must therefore compel arbitration on Plaintiff's claims because they fall within the scope of the arbitration agreement.

Second, when Merritt challenges the appropriateness of arbitration, those issues are also subject to mandatory arbitration because the GTOS contract here contains a delegation clause. The GTOS states: "The Arbitrator shall be responsible for determining all threshold arbitrability issues, including issues relating to whether the General Terms and/or Additional Terms (or any

7

aspect thereof) are enforceable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel." (ECF No. 7-4 at PageID 236.) And this language unmistakably evidences the parties' agreement to arbitrate any arbitrability issues. *See Henry Schein, Inc., v. Archer & White Sales, Inc.*, 586 U.S. 63, 70 (2019) ("This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). So any questions about the arbitration clause's enforceability or scope are arbitrable, leaving only a specific objection to a delegation clause's validity for the Court to decide. *See Swiger*, 989 F.3d at 505–06 (requiring a party to raise a "specific challenge" to a delegation clause or to waive the challenge); *Rent-A-Center*, 561 U.S. at 71–76 (considering a specific challenge to the delegation clause waived when the party challenged the entire arbitration agreement generally).

Plaintiff does not specifically challenge the validity of the delegation clause, so the Court has no basis to refuse to enforce it. *See Rent-A-Center*, 561 U.S. at 71–76 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Swiger*, 989 F.3d at 505–06 (requiring a "specific challenge" to a delegation clause). And each challenge Plaintiff raises in his brief in opposition to compelling arbitration and in his objections to the R&R are issues the parties delegated to the arbitration proceedings through the delegation clause. *See Henry Schein*, 586 U.S. at 65.

For example, Plaintiff first argues that Defendant "waived its right to compel arbitration" by never mentioning arbitration in the General Sessions lawsuit or the later appeal. (ECF No. 8 at PageID 306–07; *see also* ECF No. 17 at PageID 361–62 (arguing Defendant waived its right

8

to arbitrate by "allowing the case to mature for for years" and by "respond[ing] and participat[ing] in the lawsuit").) But waiver is a question the parties agreed to delegate to arbitration. (*See* ECF No. 7-4 at PageID 236 (delegating issues of "waiver, delay, laches, or estoppel" to arbitration).)

Next, Plaintiff argues that the arbitration clause is unenforceable because "enforcing the arbitration clause now would be unfair" since Defendant has "potential[ly] breach[ed]" the contract by failing to respond to Plaintiff. (ECF No. 8 at PageID 306–07; *see also* ECF No. 17 at PageID 361 (arguing Defendant "has materially breached the arbitration agreement and waived his right to arbitrate").) But Plaintiff's breach argument is a defense the parties also agreed would be subject to arbitration. (ECF No. 7-4 at PageID 236 (delegating "any defense to arbitration" to an arbitration proceeding).) And Plaintiff's contention that res judicata bars arbitration is also a "defense to arbitration" within the scope of the delegation clause. (*See id.*; ECF No. 8 at PageID 305–06.)

Lastly, Plaintiff argues that he did not know about the arbitration agreement and therefore cannot be subject to it. (ECF No. 17 at PageID 360–61 ("Plaintiff asserts that when he signed up for the Cash App account, it was never disclosed that arbitration was an option. . . . The Defendants failed to provide notice of this agreement during initial communications and settlement discussions, thus making an agreement unenforceable.").) But, as with his other arguments, this question about whether the GTOS is enforceable is an issue the parties delegated to arbitration. (ECF No. 7-4 at PageID 236 (delegating "issues relating to whether the [GTOS] are enforceable" to arbitration).)

And so, the Court agrees with Judge Christoff's recommendation that it must compel arbitration on these threshold questions about arbitration under the GTOS's delegation clause

9

and allow the arbitrator to decide whether the parties agreed to arbitrate the contract and tort claims.  In short, the Court **GRANTS** Defendant's motion to compel arbitration.  Further, because all of Plaintiff's claims are subject to arbitration, the Court also **GRANTS** the motion to stay the case pending arbitration.  (*See* ECF No. 7-1 at PageID 214 (requesting a stay).)  *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

## CONCLUSION

Having reviewed Judge Christoff's R&R de novo, the Court thus **ADOPTS** it, **GRANTS** Defendant's motion to compel arbitration, and **STAYS** these proceedings.  Because the Court is compelling arbitration, it also **DENIES** Plaintiff's pending motions to expedite ruling, to reassign, and to reconsider as moot.  (ECF Nos. 20, 23, 24.)

**SO ORDERED**, this 18th day of March, 2025.

                                     s/Thomas L. Parker
                                     THOMAS L. PARKER
                                     UNITED STATES DISTRICT JUDGE